IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| WOMACK+HAMPTON ARCHITECTS, L.L.C., § § § | |
| Plaintiff, § § | |
| vs. § | CIVIL ACTION NO. A-01-A-591 JN |
| § § | |
| METRIC HOLDINGS, LTD., PARTNERSHIP, et al., § § § | |
| Defendants. § | |

# MOTION FOR PARTIAL SUMMARY JUDGMENT
# OF THE CROW DEFENDANTS ON ISSUE OF DAMAGES

The Trammell Crow Residential Defendants[1] (collectively "Crow") respectfully move for entry of partial summary judgment in their favor and against Plaintiff Womack+Hampton Architects, L.L.C. ("Womack") on the amount of damages for which they may be found potentially liable to Womack. Crow moves for entry of judgment in their favor that the amount of damages for which they are potentially liable is subject to, and limited by, the express terms of written contracts between Trammell Crow entities ("Trammell Crow") and Womack entities.

I.   <u>Summary of motion</u>

Womack makes various claims of copyright infringement against Crow relating to their alleged unauthorized copying of Womack's architectural drawings. Womack seeks recovery of statutory copyright damages. However, the subject architectural drawings were all obtained by Trammell Crow from Womack under contracts which expressly contemplated Trammell Crow's

---

[1] The Crow Defendants are Trammell Crow Residential Company, TCR Operating Company, Inc., Metric Holdings Limited Partnership, TCR Metric L.P., South Central RS, Inc., TCR South Central, Inc., TCR South Central 1995, Inc., TCR South Central Division L.P., TCR Metric Construction Ltd. Partnership ("Crow Entity Defendants"), and Robert Buzbee, Lewis Bunch, Kenneth J. Valach, Perry Wilson, Chris Wheeler and J. Ronald Terwilliger ("Individual Crow Defendants"). This motion is made without waiver of the motion to dismiss that will be filed by some of the Crow Defendants.

further use of the drawings at other sites and projects, in return for specified "proper compensation." Therefore, Plaintiff's damages, if any, are limited by the express terms of the parties' contracts.

This motion addresses a central issue in this lawsuit: if plaintiff Womack should prevail against Crow on its claims of unauthorized use of its architectural drawings, what is the proper measure of damages which Womack may recover? Crow submits that Womack is improperly attempting to twist this contract dispute into a copyright dispute, even though, as a matter of law, the amount of damages for which Crow is potentially liable is limited by the express terms of the parties' contracts.

II. <u>Undisputed material facts</u>

1. Trammell Crow is involved generally in residential real estate development, and has developed and constructed multi-family residential units in Texas and in other states. Womack is an architectural firm which has prepared architectural drawings for Trammell Crow on a number of occasions. Valach Decl. ¶¶ 2, 3 (Tab A).

2. Trammell Crow was provided architectural drawings by Womack under Owner Architect Agreements for the four projects which are the subject of this lawsuit. The Owner Architect Agreements were drafted by Womack, and were signed by Womack and by Trammell Crow. Buzbee Decl. ¶ 3 (Tab B); Bunch Decl. ¶¶ 4, 5 (Tab C); Ex. 1-4.

3. Three of the four Owner Architect Agreements drafted by Womack and signed by Womack and by Trammell Crow provide that Trammell Crow agrees not to use Womack's drawings or specifications on other sites "without proper compensation to the Architect [Womack]" based upon payment of a base architectural fee of $150.00 per unit. The fourth Owner Architect Agreement includes identical language but provides for payment of a base architectural fee of $250.00 per unit. Buzbee Decl. ¶ 3 (Tab B); Ex. 1-4.

2

4.      In 1998, defendant TCR South Central 1995, Inc. ("95 Inc."), requested that Chiles Architects, Inc., make use of Windfern schematics[2] from Womack in connection with work at an apartment complex called The Reserve at North Bend. Plaintiff claims that Crow also made use of Womack's drawings from three other projects. All of the architectural drawings were obtained by Trammell Crow from Womack under the Owner Architect Agreements. Buzbee Decl. ¶ 7 (Tab B); Second Amended Complaint ¶¶ 15, 18.

5.      Womack was provided a set of the architectural plans and drawings being used by Trammell Crow at The Reserve at North Bend in September, 1998, before 95 Inc. began construction of the North Bend apartment complex. Womack Declaration ¶ 25 (Ex. 8); Hampton Declaration. ¶ 11 (Ex. 9); Chiles Aff. ¶ 3 (Ex. 10); Buzbee Decl. ¶ 8 (Tab B).

6.      Womack and Trammell Crow discussed the amount of "proper compensation" payable to Womack under the Owner Architect Agreement for use of the Windfern schematics in connection with The Reserve at North Bend. Following these discussions, in October 1998 Trammell Crow understood that it did not owe any money to Womack in connection with use of Windfern schematics at The Reserve at North Bend. Valach Decl. ¶ 8 (Tab A); Buzbee Decl. ¶¶ 11-13 (Tab B); Bunch Decl. ¶¶ 8-13 (Tab C).

7.      Construction of The Reserve at North Bend began in October 1998 and was completed in November 1999. The apartment complex was sold in 2000. Buzbee Decl. ¶ 18. Womack never objected to construction of The Reserve at North Bend and never mentioned any claimed re-use fee after October 1998, until almost three years later when it filed this lawsuit. Valach Decl. ¶¶ 6-8 (Tab A); Buzbee Decl. ¶ 13 (Tab B).

---

[2] Phases in the architectural design of a structure include creation of schematic drawings, preliminary drawings and final construction drawings. Buzbee Decl. ¶ 5 (Tab B).

3

8. Womack claims to have registered plans for Windfern, The Reserve at Cheyenne, Reserve at Charles Place, and Cambria Place with the U.S. Copyright Office only after construction of The Reserve at North Bend was completed by Trammell Crow, and shortly before, or after, this lawsuit was filed. Second Amended Complaint ¶¶ 16, 17; Womack Declaration ¶¶ 6, 9 (Ex. 8).

9. Plaintiff Womack claims that, if it should prevail on its claims against Crow, it is entitled to statutory copyright damages, including its actual damages plus any infringers' profits attributable to the infringement. Plaintiff's Second Amended Complaint ¶ 39, Prayer for Relief ¶¶ 7, 8; 17 U.S.C. § 504.

10. Crow denies that Womack is entitled to statutory copyright damages if it should prevail on its claims against Crow. Crow submits that damages recoverable by Womack, if any, are limited by the express terms of the Owner Architect Agreements prepared by Womack and signed by Womack and Trammell Crow.

III.   <u>Statement of reasons and authorities</u>

It is well settled that a party against which claims are asserted may move for a summary judgment in its favor as to all or part of the claims at any time. Fed. R. Civ. P. 56(b). Summary Judgment is an integral part of the Federal Rules of Civil Procedure, which Rules are intended to secure the just, speedy and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The central inquiry is whether there is a genuine issue of material fact. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *See TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759, 762-3 (5th Cir. 2002).

4

Crow submits that there are no genuine issues of material, or outcome-determinative, fact concerning the extent of potential damages which Womack might recover in this action, and that they are entitled to entry of the requested judgment in their favor as a matter of law.

### A. The Owner Architect Agreements expressly allow for use of Womack's drawings on other sites.

Trammell Crow obtained lawful possession of the subject architectural drawings under the Owner Architect Agreements with Womack (Exs. 1-4). In these agreements, Womack expressly agreed that there was no prohibition against copying and using the plans on other sites at other projects. The parties expressly agreed that if the plans were copied and used on other sites, then "proper compensation," a phrase which is defined in the Agreements, was due and owing to Womack.

The Agreements provide as follows:

IX. OWNERSHIP AND RE-USE OF DOCUMENTS

\* \* \*

> B. The Owner agrees not to use, copy or cause to have copied, the drawings and specifications prepared for this project on subsequent phases or other sites *without proper compensation to the Architect*, which shall be based upon a mutually agreed upon (sic) of $150.00 per unit (base architectural fee), plus engineering services, plus contingent additional hourly charges and expenses for plan modifications necessary to adapt these plans and specifications to other sites. (Emphasis added), Ex.s 1-4.[3]

The parties agreed that if Trammell Crow did copy the plans and use them at other sites, it would owe Womack "proper compensation." The language of these agreements, which were drafted

---

[3] As noted earlier, identical re-use language appears in the Owner Architect Agreements for Windfern, The Reserve at Cheyenne and The Reserve at Charles Place. Re-use language in the Owner Architect Agreement for Cambria Place provides for a base architectural fee of $250.00 per unit, but is otherwise exactly the same.

by Womack, should be given its plain meaning.[4]  If Womack should prevail on its claims of unauthorized use of architectural drawings, Womack's damages, if any, should be limited by the express language in the Owner Architect Agreement under which Trammell Crow obtained lawful possession of the subject drawings.

B. <u>Plaintiff has expressly acknowledged the applicability of the Owner Architect Agreements to this dispute</u>

It is undisputed that plaintiff Womack has expressly acknowledged the applicability of the terms of the Owner Architect Agreements to this dispute.

In 1998, 95 Inc. forwarded Womack unit and building layout schematics to architect Gary Chiles, and asked that his architectural firm prepare site plans for Trammell Crow's North Bend project, using the schematics as a basis. Buzbee Decl. ¶ 7 (Tab B). It is undisputed that a set of Chiles' plans for The Reserve at North Bend was provided to plaintiff Womack in September 1998. Womack Declaration, ¶ 14, Ex. 8; Hampton Declaration, ¶ 14, Ex. 9. After comparing Chiles Architects' plans for North Bend with Womack's plans for Windfern and The Reserve at Cheyenne, Mr. Charles Womack wrote Trammell Crow asking for payment of a re-use fee. The re-use fee requested was based on the parties' Owner Architect Agreement. Womack Declaration, ¶¶ 15, 25. Mr. Womack's letter stated, in part:

> *Our original agreement* with Trammell Crow Residential, Houston, for Windfern *calls for a $150.00 per unit Re-Use fee for future use of our plans*. Because of our long relationship with your company, and the fact that the plans were redrafted by Mr. Chiles, we are willing to accept one half of that amount, *i.e.* $75.00 per unit for a total Use Fee of $27,450.00. *Any future reuse of this product will be priced per the original written agreement.* (Emphasis added.)

---

[4]Crow notes that even if the language was unclear, it would be strictly construed against the drafter, Womack. *Temple-Eastex Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex. 1984).

On October 8, 1998, Trammell Crow's Lewis Bunch wrote Mr. Hampton confirming that Womack did not intend to litigate the re-use fee matter. Ex. 7. Mr. Bunch understood that Mr. Hampton would contact him if Womack still wanted a re-use fee. Bunch Decl. ¶¶ 9-11 (Tab C). Neither Mr. Bunch nor anyone else at Trammell Crow ever heard from Womack on this subject again, until this lawsuit was filed almost three years later. Bunch Decl. ¶ 11 (Tab C); Valach Decl. ¶ 8 (Tab A); Buzbee Decl. ¶¶ 11-14 (Tab B).

Mr. Womack makes clear in his letter dated September 30, 1998 that re-use rights under the Owner Architect Agreements may properly be exercised by other Trammell Crow entities. *See* Ex. 6. It is undisputed that Womack has expressly acknowledged the applicability of the Owner Architect Agreements to the claims of unauthorized use of architectural drawings which are made in this lawsuit. Womack should not be allowed to now disclaim its past unequivocal admission.

C. <u>Womack's claims are breach of contract claims, not copyright infringement claims.</u>

The mere fact that a contract covers copyrighted material does not allow Womack to escape the constraints of contract law. A breach of contract claim involving copyrighted material is not a copyright infringement claim. This is particularly true here, where the very contracts under which Womack provided the drawings to Trammell Crow expressly contemplated the possibility of copying and further use of the drawings. *See U.S. Naval Inst. v. Charter Communications, Inc.*, 936 F.2d 692, 695-96 (2d Cir. 1991) (exclusive licensee). Further supporting this conclusion is Womack's own September 30, 1998 statement expressly acknowledging that "future reuse of this product will be priced per the original written agreement." Ex. 6.

Plaintiff candidly states that it registered its plans for the Windfern and The Reserve at Cheyenne with the U.S. Copyright office three years after the plans were provided to Trammell

and shortly before this lawsuit was filed. Plaintiff further states that plans for The Reserve at Charles Place were registered four years after they were provided to Trammell Crow and that plans for Cambria Place were registered *six years* after they were provided to Trammell Crow and after this lawsuit was filed. Plaintiff's Second Amended Complaint ¶¶ 16, 17. Plaintiff may have hoped by this belated action to somehow transform its breach of contract claim into a copyright claim. However, such hope is misplaced.

The rights which Womack claims were violated by Crow are contract rights, not copyright rights. By contemplating further use of the drawings by Trammell Crow, in the very agreements which Womack itself drafted, Womack granted Crow a non-exclusive license to copy and use the drawings. A non-exclusive license of this type constitutes a waiver by Womack of any right to sue Crow for copyright infringement. *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998); *see also Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999).

It is true that a copyright claim may sometimes arise if a licensee has exceeded the scope of the license granted. *See Sun Microsystems, Inc. v. Microsoft Corp.*, 81 F.Supp.2d 1026, 1031-33 (N.D. Cal. 2000). However, that is not the case here. The subject agreements refer broadly and generally to use or copying of the drawings and specifications. The agreements provided that if Trammell Crow did copy the drawings, it was obligated to pay Womack "proper compensation." This gave rise to an obligation, or covenant, to pay Womack, in the event the drawings were used elsewhere.[5] A violation of a contractual covenant sounds in contract. It does not give rise to a cause

---

[5] A covenant is very different from a condition precedent, which would typically be evidenced by words such as "if," "provided that," or "on condition that." Conditions precedent are disfavored, and are not read into a contract unless clearly required by unambiguous language. *E.g., Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976); *Crisswell v. European Crossroads Shopping Center, Ltd.*, 792 S.W.2d 945 (Tex. 1990); *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 559 n. 7 (9th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991).

of action for copyright infringement. *RT Computer Graphics, Inc. v. United States*, 44 Fed. Cl. 747 (1999).

Even without the language of the parties' agreement, a non-exclusive license would properly be implied from Womack's silence and lack of objection for three full years. *Keane Dealer Services, Inc. v. Harts*, 968 F.Supp. 944, 947 (S.D.N.Y. 1997). The *Keane* court held on summary judgment that a copyright owner's knowledge that defendant was using certain software, coupled with the owner's silence in the face of defendant's use of the program, constituted an implied license to use the program. As in *Keane*, here Womack knew that Trammell Crow was making use of its schematics in connection with construction of the North Bend apartment complex. Womack lay quietly in the bushes while construction of North Bend was begun and completed and while the project was occupied and then sold. Only then, after complete silence for almost three years, did Womack file a lawsuit seeking large statutory damages. This conduct should not be countenanced. *See also I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) (non-exclusive license may be implied from conduct such as silence).

Agreements limiting parties' potential damages liability to a specified amount are enforceable, unless violative of public policy. *See Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 810 (Tex. App.–Dallas 1999, no pet.); *Vallance & Co. v. DeAnda*, 595 S.W.2d 587, 590 (Tex. App.–San Antonio 1980, no writ). The re-use clauses here cap Trammell Crow's liability for using Womack's drawings. The certainty in business transactions afforded by enforcement of the parties' agreements is clearly supportive of public policy.

If Plaintiff Womack should prevail on its claims of unauthorized use of its architectural drawings and should succeed in overcoming Crow's defenses (including waiver, estoppel, and other

9

defenses), then Plaintiff's recovery should be limited by the terms of the agreements it drafted and signed. *Graham v. James*, 144 F.3d 229, 236-37 (2d Cir. 1998) (non-payment of royalties gives rise to breach of contract claim, not copyright claim).

    D.   <u>The Individual Crow Defendants also have limited damages exposure to Plaintiff Womack</u>

Womack has alleged that the Individual Crow Defendants are personally liable for copyright infringement. Plaintiff's Second Amended Complaint ¶¶ 34, 38. It is true that theories of vicarious liability or contributory liability may sometimes result in individuals being found personally liable for corporate copyright infringement. *E.g.*, *Burdick v. Koerner*, 988 F. Supp. 1206, 1209 (E.D. Wis. 1998); *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F.Supp. 543, 554-55 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999).[6] However, where the alleged infringing action is itself only a breach of contract, contributory or vicarious liability cannot rise to the level of copyright infringement. That is the case here.

Accordingly, the potential damages liability of the Individual Crow Defendants should properly be limited by the terms of the Owner Architect Agreements.

IV.   <u>Conclusion</u>

In light of the foregoing points and authorities, the Crow Defendants respectfully pray that partial summary judgment be entered in their favor that the amount of damages for which they are potentially liable to Plaintiff Womack is limited by the terms of the subject Owner Architect Agreements.

---

    [6]   Contributory copyright infringement liability requires proof that the individual knew of the infringing activity and induced, caused, or materially contributed to it. Vicarious copyright infringement liability requires proof that the individual had the right and ability to supervise the infringing activity and also had a direct financial interest in it.

Respectfully submitted,

GRAVES, DOUGHERTY, HEARON & MOODY
A Professional Corporation
515 Congress Avenue, Suite 2300
P. O. Box 98
Austin, Texas   78767
Telephone: 512/480-5600
Telecopy:  512/478-1976


By _____
        Richard D. Yeomans
        State Bar No. 24030014
        Donald G. Jones
        State Bar No. 10869995

ATTORNEYS FOR DEFENDANTS
THE CROW DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of MOTION FOR PARTIAL SUMMARY JUDGMENT OF THE CROW DEFENDANTS ON ISSUE OF DAMAGES has been served upon all counsel in the manner described below on this 22nd day of May, 2002:

**VIA CERTIFIED MAIL - RRR**
Gregory M. Luck
SANKEY & LUCK, L.L.P.
6200 Chase Tower
600 Travis Street
Houston, TX 77002

**VIA FIRST CLASS MAIL**
Timothy N. Trop
TROP, PRUNER & HU
8554 Katy Freeway, Suite 100
Houston, TX 77024

**VIA FIRST CLASS MAIL**
Richard Harrison, Esq.
RICK HARRISON & ASSOCIATES
100 Congress Avenue, Ste. 1550
Austin, TX 78701

_____
Donald G. Jones

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

## NOTICE OF DOCUMENT(S) NOT IMAGED

Civil Case No.      A-01-CA-591 JN

WOMACK+HAMPTON ARCHITECTS

VS.

METRIC HOLDINGS, LTD., et al

Attachments to
Document #:      69

Description:      Motion for Partial Summary Judgment of the Crow Defendants on Issue of Damages

Filed By:      Defendants Trammel Crow Residential Co., TCR Operating Co., Inc., Metric Holdings Limited Partnership, TCR Metric L.P., South Central RS, Inc., TCR South Central, Inc., TCR South Central 1995, Inc., TCR South Central Division L.P., TCR Metric Construction Ltd. Partnership, and Robert Buzbee, Lewis Bunch, Kenneth Valach, Perry Wilson, Chris Wheeler and J. Ronald Terwilliger

File Date:      5/20/02