

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WOMACK+HAMPTON ARCHITECTS, | § | |
| L.L.C. | § | |
|    Plaintiff, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. A 01CA 59 1 JN |
| | § | |
| METRIC HOLDINGS LTD., PARTNER- | § | |
| SHIP; CHILES ARCHITECTS, INC.; | § | |
| TRAMMELL CROW RESIDENTIAL | § | |
| COMPANY; TCR OPERATING | § | |
| COMPANY, INC.; TCR METRIC, L.P.; | § | |
| SOUTH CENTRAL RS, INC.; TCR | § | |
| SOUTH CENTRAL, INC.; TCR SOUTH | § | |
| CENTRAL1995, INC.; TCR SOUTH | § | |
| CENTRAL DIVISION L.P.; TCR METRIC | § | |
| CONSTRUCTION LTD. PARTNERSHIP; | § | |
| GARY CHILES; ROBERT BUZBEE; | § | JURY TRIAL DEMANDED |
| LEWIS BUNCH; KENNETH J. VALACH; | § | |
| PERRY WILSON; CHRIS WHEELER; | § | |
| J. RONALD TERWILLIGER | § | |
| Individuals | § | |
|    Defendants. | § | |

**PLAINTIFF, WOMACK+HAMPTON'S**
**RESPONSE AND OPPOSITION TO CROW DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**
**ON THE ISSUE OF DAMAGES**
**AND**
**CROSS-MOTION FOR PARTIAL SUMMARY**
**JUDGMENT THAT PLAINTIFF'S IS ENTITLED**
**TO DAMAGES FOR COPYRIGHT INFRINGEMENT**

Gregory M. Luck
Thomas W. Sankey
SANKEY & LUCK, L.L.P.
6200 Chase Tower,  600 Travis
Houston, Texas  77002
(713) 224-1007 - Telephone
(713) 223-7737 - Facsimile

Tim Trop
TROP, PRUNER & HU, P.C.
8554 Katy Freeway, Suite 100
Houston, Texas 77024
(713) 468-8880 - Telephone
(713) 468-8883 - Fax

ATTORNEYS FOR PLAINTIFF
WOMACK+HAMPTON, L.L.C.

76

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WOMACK+HAMPTON ARCHITECTS, L.L.C. | § § § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. A 01CA 59 1 JN |
| | § | |
| METRIC HOLDINGS LTD., et al. | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF, WOMACK+HAMPTON'S
RESPONSE AND OPPOSITION TO "CROW DEFENDANTS'"
MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE ISSUE OF DAMAGES
AND
CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT THAT PLAINTIFF'S IS ENTITLED
TO DAMAGES FOR COPYRIGHT INFRINGEMENT**

Plaintiff, Womack+Hampton, L.L.C. ("Womack+Hampton"), herein submits its Response and Opposition to the Motion filed by the TCR Defendants (hereinafter "Crow Defendants or Defendants"), for Partial Summary Judgment on the issue of damages. Womack+Hampton also cross moves for partial summary judgment on the issue that the Crow Defendants are subject to liability for copyright infringement and that Plaintiff is therefore entitled to recover copyright damages.

Defendants' Motion should be denied on the basis that they have failed to satisfy their burden under Fed. R. Civ. P., Rule 56 to demonstrate the absence of any genuine issue of material fact that would entitle them to a judgment as a matter of law that Womack+Hampton may not recover damages for copyright infringement.

Defendants' Motion is legally untenable as premised on an erroneous characterization of their right to re-use architectural works prepared by Plaintiff. Contrary to the facts recited and that authority relied upon by them, the TCR Defendants did not possess a license to re-use or modify Plaintiff's architectural works. In this connection, it is uncontroverted that while the operative

1

contracts between the parties provided the Crow Defendants an *option* to acquire a license to use Plaintiff's copyrighted works, this option was never exercised. Absent such option, the TCR Defendants stand in no better stead than a naked infringer with respect to their wrongful use and modification of Plaintiff's architectural works. As a matter of law, therefore, Defendants are subject to liability for copyright infringement pursuant to 17 U.S.C. § 501 and Plaintiffs are entitled to recover copyright damages pursuant to 17 U.S.C. § 504.

For its Response, Plaintiff relies upon the Declarations of Charles R. Womack and R. Michael Hampton, the pleadings and such other evidence which may be presented at the hearing on Chiles' Motion.

## I.
## NATURE AND STAGE OF THE PROCEEDINGS

In a complaint filed on September 6, 2001, Womack+Hampton charged two TCR defendants, TRC and Metric, with infringement of Womack+Hampton's copyrights for architectural works entitled "THE RESERVE AT CHEYENNE" and "WINDFERN". The work that is the subject of Plaintiff's complaint is an apartment complex in Austin named "The Reserve at Northbend".

TCR and Metric responded to Womack+Hampton's complaint and denied infringement. These Defendants also asserted a number of affirmative defenses to bar Plaintiff's claims.

Plaintiff filed its Second Amended Complaint on March 21, 2002. In this Second Amended Complaint, Plaintiff added TCR Defendants Metric Holdings Limited Partnership; Chiles Architects, Inc.; Trammell Crow Residential Company; TCR South Central 1995, Inc., TCR Operating Company, Inc.; TCR Metric L.P.; South Central RS, Inc.; TCR South Central, Inc..; TCR South Central Division L.P.; TCR Metric Construction Ltd.; Gary Chiles; Robert Buzbee; Lewis Bunch; Kenneth J. Valach; Perry Wilson; Chris Wheeler; and J. Ronald Terwilliger. These Defendants are referred to herein as "the TCR Defendants."

## II.
## SUMMARY OF ARGUMENT

By this Motion, Defendants have now admitted that they copied and thus infringed Plaintiff's copyrights in architectural works. The focus of this action has therefore been distilled into the issue of whether Defendants are liable for infringement and damages under Title 17, United States Code.

2

Defendants' Motion should be denied on the basis that it relies upon an erroneous factual predicate that Plaintiff and Defendants entered into a licensing relationship for the re-use of Plaintiff's architectural works. As evidenced by the operative contracts and as confirmed by Defendants' admissions to its co-Defendants and by the prior course of dealings between the parties, it is uncontroverted that no such relationship existed. Consequently, and as a matter of law, the TCR Defendants had no right to re-use or modify Plaintiff's copyrighted works and thus their unauthorized use and modification of these works gives rise to damages for copyright infringement pursuant to 17 U.S.C. § 504.

The TCR Defendants' failure to demonstrate the absence of genuine issues of material fact to support their argument for the exclusive application of contractual damages compels the denial of their Motion for Partial Summary Judgment. Conversely, and as a matter of law, the absence of genuine issues of material fact compels the entry of judgment that Plaintiff is entitled to recover a measure of damages for copyright infringement.

## III.
## ARGUMENT

### A.    The Standard for Granting Summary Judgment

On a motion for summary judgment, the moving party bears the burden of showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating the merits of a motion for summary judgment, the district court must view all the evidence before it in a light most favorable to the nonmovant and must further draw all reasonable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *TIG Ins. Co. v. Sedwick James of Wasington*, 276 F.3d 754, 759 (5th Cir. 2002).

A factual question is material if a reasonable jury could return a verdict for the nonmoving party based at least in part on its determination of the factual question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. A genuine dispute is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *(Id.)*

### B.    The TCR Defendants Were Not A Licensee of Plaintiff
### For The Re-use of Plaintiff's Architectural Works

Defendants' Motion is exclusively premised on the predicate that TCR is a licensee of

Plaintiff for the re-use of those architectural works asserted by Plaintiff in this action, that they failed to pay the fee under this license, and are thus solely liable for breach of contract. (Mtn. at 8). It is only by making this strained argument that the line of authorities relied upon by Defendants have any application. This factual predicate, however, is erroneous.

In or about 1997-1998, one or more TCR Defendants commissioned Plaintiff to prepare architectural drawings and to render architectural services in connection with four projects designated: "WINDFERN," "RESERVE AT CHEYENNE", "CAMBRIA" and "RESERVE AT CHARLES PLACE". Defendants rendered professional services to Defendants for each of these projects under separate "Owner/Architect Agreements". (Exhibits "A" through "D" to Declaration of R. Michael Hampton). These Agreements, identical in all respects with respect to the issues raised in Defendants' Motion and Plaintiff's Cross-Motion[1], clearly and unambiguously provided that Plaintiff retained all rights in the copyrights in such works:

> A.   The Drawings, Specifications, and other documents prepared by the Architect for this project are instruments of the Architect's service for use *solely with respect to this project* and the *Architect shall be deemed the author of these documents and shall retain all common law, statutory, and other reserved right, including copyright.* The Owner shall be permitted to retain copies including reproducible copies of the Architect's Drawings, Specifications, and other documents for information and reference in connection with the Owner's use and occupancy of the project. The Owner's rights to the Architect's Drawings, Specifications, and other Project related documents shall also extend to the Owner's Lender and Owner's equity partner, (as well as the partnership formed by Owner and such equity partner), and Architect shall, upon request, execute documents to confirm the right of such parties to have and use the Architect's Drawings, Specifications and other applicable project documents to the same extent as the Owner.

(Exhibit "A" to Hampton Decl.; Section IX (A)) (emphasis added).

These contracts further provided that all rights conveyed to TCR for those architectural works developed by Plaintiff under each contract were *expressly limited* to that project. (*Id.*)

Normal rules of contract construction are generally applied in construing a copyright license. *Kennedy v. National Juvenile Detention Assoc.*, 187 F.3d 690, 694 (7th Cir. 1999), *cert. denied*, 120

---

[1] A separate contract was executed for each project. (*See* Exhibits "A" through "D" to Hampton Decl.). However, the operative portions of these contracts save a higher revenue fee for the Cambria, are substantively identical.

S. Ct. 1169 (2000). However, these rules of construction may not conflict with purposes underlying federal copyright law. *Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 854 (9th Cir. 1988)[2]. Thus, state law can provide the contractual construction, but only to the extent such rules do not interfere with federal copyright law or policy. *See Fantastic Fakes, Inc. v. Pickwick, International, Inc.*, 661 F.2d 479, 482-483 (5th Cir. 1981) (state law rules of contract construction not preempted by federal law; however, application of state law to implied terms in copyright license would raise preemption question). Construing the contract against the drafter is thereby contrary to federal copyright policy. *S.O.S.*, 886 F.2d at 1088.

Chief among the purposes of federal copyright law is the preservation in the author of those rights not expressly granted. To this end, the terms of a license will be strictly construed to preserve these rights. (*Id.*). For this reason, copyright licenses are presumed to prohibit any use not expressly authorized. (*Id.*)

The clear intent of the parties to limit Defendants' rights to the specific, named project is evidenced at Section IX (B) of the operative contracts which expressly foreclosed re-use of these architectural works unless Defendants executed an option for re-use:

> **B.**   *The Owner agrees not to use, copy or cause to have copied, the drawings and specification prepared for this project on subsequent phases or other sites without proper compensation to the Architect, which shall be based upon a mutually agreed upon of $150.00 per unit (base architectural fee), plus engineering services, plus contingent additional hourly charge and expenses for plan modifications necessary to adapt these plans and specifications to other sites.*

(Exhibit "A" to Hampton Decl.; Section IX (B)) (emphasis added).

This intent, expressed by the unambiguous language of the operative contracts, is controlling for purposes of the Motions of both parties. *Barris Indust., Inc. v. WorldVision Enters, Inc.*, 875 F.2d 1446, 1449 (9th Cir. 1989) (The focus in contract construction is to determine the intent of the parties.). A contract must be interpreted "in a way that ascribes meaning, if at all possible, to all of its terms." *Kennedy v. National Juvenile Detention Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999), *cert. denied*, 120 S. Ct. 1169 (2000). While Defendants contend that they allegedly "understood that [they] did not owe any money to Womack in connection with use of Windfern schematics" (Mtn.

---

[2]   *See, also, S.O.S. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989). In *S.O.S.*, a lower court attempted to interpret an alleged copyright license pursuant to state law principles. The Ninth Circuit found that the license must be construed in accordance with the purposes underlying federal copyright law.

at 3, ¶ 6), this subjective intent is no more than wishful thinking that it is inconsistent with the actions of the parties and is therefore non-dispositive for purposes of this Motion. *I.A.E., Inc. v. Seaycontrell*, 74 F.3d 768, 77 (7th Cir. 1996)("intent relevant in contract matters is not the parties' subjective intent but their outward manifestation of it").[3]

Defendants seek to avoid Section IX, by construing the operative contracts where they received a re-use license for no consideration. This interpretation fails as contrary to one of the primary axioms of contract construction where one party is essentially given "something for nothing". *See 3 Nimmer on Copyright* § 10.08 at 10-72, 73. Where, as here, rights are not expressly granted the licensee must be construed as preserving those non-granted rights in the copyright owner. *Cohen*, 845 F.2d at 855; *S.O.S.*, 886 F.2d at 1088.

Defendants have not and cannot point to any provision in the operative contracts between the parties which gave the TCR Defendants any rights in the re-use of Plaintiff's architectural works. Quite to the contrary, it is uncontroverted that this option was never exercised by Defendants. Defendants admit that they did not execute this option by the payment of a re-use fee (Mtn. at 6, ¶ 6). Absent such payment, Defendants plainly were not licensed for the re-use of Plaintiff's works.

## C.   Defendants Creation of Derivative Works
##        Also Subjects Them to Infringement

Even if the Court were to adopt Defendants' strained construction of the operative agreements as giving rise to a license to re-use, it is plain that Defendants violated even this license. Defendants argue that they received a non-exclusive license to re-use the subject works according to the operative contracts. (Mtn. at 8). Section IX (B) of these contracts provided Defendants an option to re-use an exact copy of Plaintiff's architectural works (Exhibit "A" to Hampton Decl.). Defendants admit, however, that they altered or induced the alteration of Plaintiff's works in the development of the Reserve at North Bend. (*Id.* at 3, ¶ 4). As a matter of law, this modification by

---

[3] Defendants' position is further at odds with admissions made to its agent and co-Defendant, Chiles Architects, Inc. In its deposition, Chiles Architects testified that it was told by TCR that TCR had entered into an agreement with Womack+Hampton for the re-use of Plaintiff's architectural designs. (Chiles' Depo. Tr. at 21, 27-29, 64-65, 69, 70-71, 77, 133, 136 and 146; Exhibit "A" to Luck Decl.). Chiles further testified that these assurances from TCR continued as late as the filing of this action (*Id.* at 91) and that it was only when Chiles Architects recognized the absence of any such agreement that it filed a cross-claim against TCR (*Id.*). Defendants' admission to Chiles Architects that it recognized the need for a re-use agreement directly contradicts its current position that it believed it needed no agreement or that it believed Plaintiff somehow agreed to TCR's re-use of Plaintiff's designs.

Defendants gives rise to an unauthorized derivative of Plaintiff's original architectural works[4].

Defendants' own authorities recognize that one may infringe a copyright by operating outside the scope of the license agreement. *See Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999) ( "if, however, a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement."); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d at 1087. The creation of a derivative work is outside the scope of even Defendants' interpretation of a license to re-use a copy of Plaintiff's architectural works. *See S.O.S., Inc. v. Payday, Inc.*, *supra*.

In *S.O.S.*, Payday acquired the right to use the software, but S.O.S. retained all ownership rights. Exactly the same situation applies here; Womack+Hampton expressly retained all ownership rights under Section IX (A) of the operative agreements. In *S.O.S.*, the contract in question provided for a $50.00 per hour fee to S.O.S. if Payday wished to modify the program itself. The district court granted summary judgment in favor of Payday, but the Court of Appeals reversed. The Court of Appeals found that the contract did not give Payday the right to prepare derivative works and, therefore, the granting of summary judgment was inappropriate. Here, as in *S.O.S.*, the express terms of the option did not provide the right to make a derivative work. The provision here and in *S.O.S.*, that the licensee would have to pay the licensor an hourly rate in order to modify the work, further confirms that no right to make derivative works can or should be implied.

Here, the operative contracts are explicit that there is an option to re-use but no right to prepare derivative works. Moreover, the specifics of the agreements are that if Defendants wanted a derivative work to be prepared they had to have it prepared by Womack+Hampton. This means that no right to make derivative works was ever expressly granted, no such right is granted by implication under federal law, and moreover, the intent *not* to grant a right to make derivative works was expressed.

Consistent with the reasoning of the *S.O.S.*, no license or grant of rights to make derivative works may be extended. Since the TCR Defendants exceeded the scope of any license they claim

---

[4] A "derivative work" is defined at 17 U.S.C. § 101 as "a work based upon one or more preexisting works" or "any other form in which a work may be recast, transformed, or adapted." *See Quintanilla v. Texas Television, Inc.*, 139 F.3d 494, 500 (5th Cir. 1998). The owner of a copyrighted work has the exclusive right to reproduce the work in copies, to prepare derivative works based on the copyrighted work, to distribute copies of the work to the public, and, in the case of certain types of work, to perform and display the work publicly. *Vault Corp. v. Quaid Software, Ltd.*, 847 F.2d 255, 258 (5th Cir. 1988).

to have, they are therefore guilty, as a matter of law, of copyright infringement.   Defendants have admitted that they prepared derivative works using the Plaintiff's copyrighted plans and only contend that they had a right to do so.   Absent a right to do so, copyright infringement and its measure of damages is applicable here. Hence, Defendants are liable for copyright infringement and damages pursuant to 35 U.S.C. § 501, *et seq.*

### D.   The Authorities Relied Upon By Defendants Do Not Support Contract Damages

Defendants rely on a line of authorities for the proposition that Plaintiff's cause of action, and consequent damages, are limited to re-use fees under the Owner/Architect Agreements.   This argument is specious.   The cases of *Graham v. Jones*, 114 F.3d 229 (2nd Cir. 1998), *Sun Microsystems, Inc. v. Microsoft*, 188 F.3d 1115 (9th Cir. 1999), and *U.S. Naval Inst. v. Charter Comm.*, 936 F.2d 692 (2nd Cir. 1991) address the scenario where a licensee *breaches* the terms of an existing license and is then sued by the licensor for copyright infringement.   These cases are inapposite since the express terms of the contracts between the parties foreclosed the existence of a re-use license absent an independent agreement for such re-use and the payment of a re-use fee. Unlike the cited authorities in this case, there was no pre-existing license between the parties for the re-use of Plaintiff's architectural works and thus Plaintiff is not confined to remedies for breach of contract.[5]

The tenuous nature of Defendants' argument is revealed in the course of dealings between the parties in the other instances where Plaintiff did enter into a separate agreement for the re-use of architectural works for a projects designated "The Reserve at Barton Creek".   In that instance, and in direct conflict with their current litigation-driven argument, the TCR Defendants recognized that their re-use of Plaintiff's architectural works was not authorized *until* they entered into a separate agreement with Plaintiff and paid the re-use fee. (*See* Exhibit "E" to Hampton Decl., ¶ 9).   Evidence of the custom and practice between the parties is relevant in clarifying the intent concerning the re-use of architectural works. *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1088, n.8 (9th Cir. 1989) (comparing prior agreements between the parties to establish the scope of the license agreement); *U.S. Naval Inst. v. Charter Communications*, 875 F.2d 1044, 1049 (2nd Cir. 1989).   In this connection, it is the outward "manifestation" of intent which controls its determination of the intent

---

[5]   *I.A.F. v. Shen* is also readily distinguishable.   In that case, the architect sued for the use of plans for which he had been paid compensation.   Further, there was no contract language which foreclosed this use.   None of these facts are present here.   Defendants had not exercised the option for the re-use of the subject works.

of the parties to a license. *I.A.F.*, 74 F.3d at 77. This course of dealing between the parties as requiring a separate license and re-use fee is admitted by Defendants. *See* Valach Decl. at ¶ 5. This admission by Defendant also dispatches any argument that they acquired an "implied license" to these works, as addressed below.

Plainly, the execution of an option agreement and the payment of the re-use fee was a condition precedent to the issue of any license to re-use Plaintiff's architectural works. As recognized by Defendants' own authorities, a failure to satisfy a condition precedent to a license gives rise to an action for copyright infringement. *See Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 483-84 (5th Cir. 1981) (a breach of a condition precedent will give rise to an action for contractual damages); *RT Computer Graphics, Inc. v. U.S.*, 52 U.S.P.Q. 2d 1436, 1444 (Fed. Cir. 1999). *See, also, 3 Nimmer on Copyright* § 10.15[A] at 10-120:

> However, if the nature of a licensee's violation consists of a failure to satisfy a condition to the license . . ., it follows that the rights dependent upon satisfaction of such condition have *not been effectively licensed*, and therefore, *any use by the licensee without authority from the licensor and may therefore, constitute an infringement of copyright.*

(emphasis added).

### E.   Defendant's Infringement Of Plaintiff's Copyrighted Works Does Not Give Rise To An "Implied License"

Adopting the role of the revisionist historian, Defendants alternately argue that their willful infringement of Plaintiff's copyrighted works gave rise to an "implied license." This argument is absurd and the authorities on which its relies are again inapposite.[6]

An implied license cannot be created where, as here, that which is sought to be implied is directly contradicted by a formal expression by the parties. *See Woodward v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964) ("where there exists a valid express contract covering the subject matter, there can be no implied contract."); *Coghlin v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001)(implied contract is unavailable when valid, express contract governs the subject matter of the dispute); *Lulirama Ltd. v. Axcess Broadcast Services, Inc.*, 128 F.3d 872, 881 (5th Cir.

---

[6] Defendants rely on *Keane Dcolen Services, Inc. v. Williams Hart*, 968 F. Supp. 944 (S.D.N.Y. 1987). In *Keane*, the Court found the existence of an implied license based on the uncontroverted evidence that the copyright holder (1) acquiesced in such case; and (2) knew of Defendants' use of the copyrighted material. *Id.* at 947. The opposite facts are presented here.

1997) (an implied license can exist if an express, written contract covers the subject matter);*Crawford v. Protective Life Ins. Co.*, 2000 WL 33348737, *3 (W.D. Tex. 2000). In this case, the operative contracts between Plaintiffs and Defendants erase any doubt that the re-use of Plaintiff's architectural works was expressly prohibited absent a separate agreement and consideration for such re-use.

The Fifth Circuit in *Lulirama Ltd., Inc. v. Access Broadcast Services, Inc.* set forth those factors which gave rise to an implied license as including:  1) the business' request for the creation of the work; 2) the business' creation and delivery of the works to the business; and 3) the business intent that the business copy and distribute the work. *Id.* at 879.   This test is not met here.

As set forth in the Declarations of Plaintiff's principals, Charles Womack and R. Michael Hampton, Plaintiff did not agree, intend or acquiesce in any use of its copyrighted works without execution of a re-use agreement and the payment of a re-use fee.  (Womack Decl. at ¶ 18, *et seq.*) (Hampton Decl. at ¶ 8, 12, 16-17).   Quite the contrary, Plaintiff notified Defendants' agent, Defendant Chiles Architects, Inc., that Chiles' improper use gave rise to an action for copyright infringement.  (Exhibit "C" to Womack Decl.).

In a letter dated September 30, 1998, Plaintiffs made demand on the TCR Defendants for execution of the option if they intended to re-use Plaintiff's plans (*See* Exhibit "A" to Womack Decl.).   Defendants refused to pay this fee, threatening Plaintiff with a loss of business should Plaintiff pursue the matter:

> Like President Clinton, I acknowledge a sin (continuing to reference Winfern) but plead innocent of a legal violation, subject to a better understanding of what your copyright covers.  Unfortunately, I do not have the legal expertise to evaluate this matter without a lawyer, which is a very unpleasant and unattractive course of action. *Alternatively, you are suggesting that TCR South Central pay you a fee to make the issue go away. Mike, this is also a very unpleasant alternative.*
>
> Considering how much business that you do with TCR; considering that I am often asking you if you have capacity for additional work; and, considering that you and Charles have already told me that you do not intend to litigate this misunderstanding (I view suing Gary Chiles and TCR as one and the same), I request that you drop this matter and focus on doing more profitable business with us.  Please do not underestimate the seriousness of this letter. *If you insist on pursuing this matter, it will have a profound impact on future TCR business.*

(Exhibit "D" to Womack Decl.) (emphasis added).

These protests and threats of litigation by Plaintiff are hardly consistent with the notion that Plaintiff somehow acquiesced in Defendants' infringement.  The proposition implicitly advanced

by Defendants is that Plaintiff's actions, to the extent they were anything short of litigation, gives rise to an implied license to infringe. As revealed by the absence of supporting caselaw, this is not nor has ever been the law.

**F.      Womack+Hampton's Cross-Motion for Partial**
**        Summary Judgment Should be Granted**

The terms of the operative contracts between the parties vested exclusive rights in the copyright of the architectural works for all uses other than the subject of the specific project for which the plans were created.   Absent the exercise of the re-use option through the exercise of a separate contract and the payment of the re-use fee, the TCR Defendants had no right or license to re-use Plaintiff's copyrighted works or derivative works.  As a matter of law, any attempted re-use or modification of Plaintiff's copyrighted works absent the exercise of this option by its terms, gave rise to an action for copyright infringement pursuant to 17 U.S.C. § 501.  It necessarily follows that Defendants' failure to exercise the option to re-use Plaintiff's architectural works, compounded with Defendants' admitted re-use and modification of these works, gives rise to an action for copyright infringement for which copyright damages may be awarded pursuant to 17 U.S.C. § 504.

**IV.**
**CONCLUSION**

For the reasons set forth above, the TCR Defendants' Motion for Partial Summary Judgment should be denied.

Furthermore, the uncontroverted facts compel the entry of a judgment for Plaintiff that Defendants' re-use and modification of Plaintiff's works gave rise to an action for copyright infringement for which copyright damages may be awarded.

A Proposed Order is attached herewith.

Respectfully submitted,

SANKEY & LUCK, L.L.P.

Date: 6/3/02

Gregory M. Luck
Thomas W. Sankey
600 Travis, Suite 6200
Houston, Texas   77002
(713) 224-1007 - Telephone
(713) 223-7737 - Facsimile

11

Timothy N. Trop
Trop, Pruner & Hu
8554 Katy Freeway, Suite 100
Houston, Texas 77024
(713) 468-8880 - Telephone
(713) 468-8883 - Facsimile

ATTORNEYS FOR PLAINTIFF
WOMACK+HAMPTON, L.L.C.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of Plaintiff Womack+Hampton's Response and Opposition to Crow Defendants' Motion for Partial Summary Judgment on the Issue of Damages and Cross-Motion for Partial Summary Judgment that Plaintiff is Entitled to Damages for Copyright Infringement; Declaration of Gregory M. Luck; Declaration of Charles R. Womack; Declaration of R. Michael Hampton and Proposed Order has been served to opposing counsel by Certified Mail, Return Receipt Requested on this 4th day of June, 2002 to:

Rick Harrison
Rick Harrison & Associates
100 Congress Ave., Suite 1550
Austin, Texas 78701

Richard D. Yeomans
Don G. Jones
Graves, Dougherty, Hearon & Moody
515 Congress Ave., Suite 2300
Austin, Texas 78701


Gregory M. Luck

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

## NOTICE OF DOCUMENT(S) NOT IMAGED

Civil Case No.        A-01-CA-591 JN

WOMACK+HAMPTON ARCHITECTS

VS.

METRIC HOLDINGS LTD., et al

Attachments to
Document #:        76

Description:        Response and Opposition to Crow
Defendants' Motion for Partial Summary
Judgment on the Issue of Damages and
Cross-Motion for Partial Summary
Judgment that Plaintiff is Entitled to
Damages for Copyright Infringement

Filed By:        Plaintiff

File Date:        6/5/02

_____

DEPUTY CLERK